**LEWIS BRISBOIS BISGAARD & SMITH LLP**
EDWARD R. GLADY, JR., AZ State Bar No. 009459
Phoenix Plaza Tower II
2929 N. Central Avenue, Suite 1700
Phoenix, Arizona 85012-2761
Telephone: 602.385.1040
Facsimile: 602.385.1051

DANIEL C. DECARLO, CA State Bar No. 160307- *Admitted Pro Hac Vice*
DANIEL R. LEWIS, CA State Bar No. 260106 -*Admitted Pro Hac Vice*
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.250.1800
Facsimile: 213.250.7900

*Attorneys for Defendant Omnia Italian Design, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| STONE CREEK, INC., an Arizona corporation, | CASE NO. 13-CV-00688-NVW |
| Plaintiff, | **DEFENDANT OMNIA ITALIAN DESIGN INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| OMNIA ITALIAN DESIGN, INC., a California corporation; and THE BON-TON STORES, INC., a Pennsylvania corporation, | **[Oral Argument Requested]** |
| Defendant. | Trial Date:      None Set |

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................2

II.   THE UNDISPUTED FACTS THAT JUSTIFY SUMMARY
      JUDGMENT .........................................................................................2

III.  SUMMARY JUDGMENT STANDARD ................................................3

IV.   LEGAL ARGUMENT ............................................................................3

      A.   Plaintiff's Claims For Violations of the Lanham Act Fail as Plaintiff
           had not Acquired Trademark Rights in the Bon-Ton Trading Territory
           Prior to Omnia's Use of the Stone Creek Mark in the Bon-Ton
           Trading Territory.............................................................................3

           1.   Common Law Trademarks Are Not "Rights in Gross", Rather,
                Trademarks Protect the Goodwill and Reputation of a
                Business.  Plaintiff  Has no Reputation or Goodwill in The
                Bon-Ton Trading Territory, Hence, It Has never earned any
                Trademark Rights in that Locale..........................................4

                (a)   Nearly a Century Ago, The Supreme Court Penned Two
                      Landmark Decisions That Provide Guidance for
                      Evaluating Alleged Common Law Trademark Rights. ............5

                (b)   Plaintiff's Cannot Show Any Market Penetration, Let
                      Alone Significant Market Penetration Into The Bon Ton
                      Trading Territory ........................................................6

                      (i)    Plaintiff Can Not Evidence Any Advertising in
                             the Bon-Ton Trading Territory.......................................7

                      (ii)   Plaintiff Cannot Even Demonstrate Any Sales
                             Into The Bon-Ton Trading Territory. ...........................9

                      (iii)  Plaintiff Failed to Conduct a Survey, And
                             Omnia's Survey Illustrates That Consumers in
                             the Bon-Ton Trading Territory Have No
                             Consumer Recognition of Stone Creek. .......................11

                (c)   Because Plaintiff Cannot Demonstrate Any Trademark
                      Rights in The Bon-Ton Trading Territory, Good Faith Is
                      Not an Element of the Defense. ...............................12

           2.   Plaintiff's Claim  Under 15 U.S.C. §1114 Fails. ................12

                (a)   The Tea Rose-Rectanus Defense ............................13

                      (i)    Omnia Selected the Mark in Good Faith ....................14

                      (ii)   Omnia's Use of the Stone Creek Mark Was

Remote. ..........................................................................15

B.   Omnia Is Not Liable For Common Law Trademark Infringement Nor Unfair Competition As Plaintiff had no rights in the Bon-Ton Trading Territory. .....................................................................15

C.   Omnia Is Not Liable For State Trademark Infringement Under A.R.S. §44-1441As None of the Accused Sales Occurred in Arizona. .................15

D.   Plaintiff Has Admitted that Omnia Did Not Misappropriate any of Its Trade Secrets, Hence, Omnia Is Not Liable For Violation of the Arizona Trade Secret Law (A.R.S. §44-401) ...................................16

E.   Plaintiff Has Admitted that Omnia Did Not Convert Any Of Its Physical Property, Hence, Omnia Can Not Be Liable For Causes of Action Seven Through Ten. ...................................................16

F.   Plaintiff Has Admitted That There Was No Contract Preventing Omnia From Using The Stone Creek Name, Accordingly, Plaintiff's Breach Of Contract Claim Fails. ................................................16

G.   Omnia Did Not Breach Any Implied Covenant of Good Faith As Plaintiff Received The Benefit Of the Bargain. ..............................17

V.   CONCLUSION ................................................................17

1

## TABLE OF AUTHORITIES

2

## FEDERAL COURT CASES

3
4
*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ............................................................................................ 3

5
*Cairns v. Franklin Mint. Co.,*
   24 F.Supp.2d 1013 (C.D.Cal. 1998) ............................................................. 11

6
7
*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ............................................................................................ 3

8
*Credit One Corp. v. Credit One Fin., Inc.,*
   661 F. Supp. 2d 1134 (C.D. Cal. 2009) ........................................................... 7

9
10
Credit One Corp. v. Credit One Financial, Inc., 661 F. Supp. 2d 1134 (C.D. Cal.
   2009) ......................................................................................................... 4, 5

*Furthermore, in Bright Beginnings v. Care Comm.,*
11
   1994 U.S. Dist. LEXIS 17914 (C.D. Cal. Feb. 28, 1994) ................................ 14

12
*Glow Indus. Inc. v. Lopez,*
   252 F. Supp. 2d 962 (C.D. Cal. 2002) ............................................................. 5

13
14
*Hanover Star Milling Co,. v. Metcalf,*
   240 U.S. 403 (U.S. 1916) ............................................................................ 5, 14

15
*Hispanic Broad. Corp. v. Educ. Media Found.,*
   2003 U.S. Dist. LEXIS 24804 (C.D. Cal. Oct. 30, 2003) ............................... 14

16
*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,*
17
   475 U.S. 574 (1986) ............................................................................................ 3

18
*Optimal Pets, Inc. v. Nutri-Vet, LLC,*
   877 F. Supp. 2d 953 (C.D. Cal. 2012) ................................................. 4, 6, 12

19
*Thrifty Rent-A-Car System v. Thrift Cars Inc.,, Inc.,* 639 F. Supp. 750 (D. Mass.
20
   1986) ........................................................................................................... 14

21
*United Drug Company v. Theodore Rectanus Company,*
   248 U.S. 90 (1918) .............................................................................................. 4

22
*United Drug Company v. Theodore Rectanus Company,*
   248 U.S. 90, 98 (1918) ....................................................................................... 5

23

## STATE COURT CASES

24
*Bike Fashion Corp. v. Kramer,*
25
   202 Ariz. 420 (Ariz. Ct. App. 2002) ............................................................... 17

26
*Focal Point v. U-Haul Co.,*
   155 Ariz. 318 (Ariz. Ct. App. 1986) ............................................................... 16

27

## FEDERAL STATUTORY AUTHORITIES

28

DEFENDANT OMNIA ITALIAN DESIGN INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

15 U.S.C. §1057 ................................................................................................. 4

15 U.S.C. §1114 ............................................................................................. 1, 12

15 U.S.C. §1114(1) ............................................................................................. 3

15 U.S.C. §1115(a) ........................................................................................... 12

15 U.S.C. §1125(a) ............................................................................................. 3

**FEDERAL RULES AND REGULATIONS**

Fed. R. Civ. P. Rule 56(c) .............................................................................. 2, 3

**ADDITIONAL AUTHORITIES**

Restatement (Third) of Unfair Competition § 19 (1995) ............................... 13, 14

1    Pursuant to Rule 56, Federal Rules of Civil Procedure ("FRCP"), Defendant Omnia

2  Italian Design, Inc. ("Omnia"), by and through undersigned counsel, hereby moves for

3  summary judgment, or in the alternative, partial summary judgment, in favor of Omnia as

4  to all claims brought by Plaintiff for the following reasons:

5    1.    Plaintiff's First Claim For Relief for Federal Trademark Infringement

6  under 15 U.S.C. §1114 fails as a matter of law as the undisputed facts demonstrate that

7  Omnia's common law rights in the Stone Creek mark prior to Plaintiff's registration in

8  2012 serves as a complete defense.

9    2.    Plaintiff's Second Claim For Relief for Federal Unfair Competition and

10  False Designation of Origin under 15 U.S.C. §1125(a) fails as a matter of law as the

11  undisputed facts demonstrate that Plaintiff did not possess any trademark rights in the

12  states where the Defendants' sold the accused products.

13    3.    Plaintiff's Third, Fourth and Fifth Claims For Relief fail as a matter of law as

14  it is undisputed that Defendants' did not sell any of the accused products in Arizona.

15    4.    Plaintiff's Sixth Cause of Action for Violation of the Arizona Trade Secrets

16  Act fails as a matter of law as it is undisputed that Omnia did not misappropriate any of

17  Plaintiff's trade secrets.

18    5.    Plaintiff's Seventh, Eighth, Ninth and Tenth Claims For Relief fail as a

19  matter of law as it is undisputed that Omnia did not convert any of Plaintiff's property.

20    6.    Plaintiff's Eleventh and Twelfth Claims For Relief fail as a matter of law as

21  it is undisputed that the contract at issue did not prohibit Omnia from using the mark Stone

22  Creek, and the Plaintiff cannot establish that Omnia has breached any contract.

23    7.    Omnia did not act in bad faith.

24

25  DATED: March 28, 2014            LEWIS BRISBOIS BISGAARD & SMITH LLP

26                    By:    /s/ Daniel C. DeCarlo
                            Daniel C. DeCarlo
27                          Attorneys for Omnia Italian Design, Inc.

28

4820-0685-9802.1                            1
DEFENDANT OMNIA ITALIAN DESIGN INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Unregistered trademarks are creatures of geography, that is to say, the rights only extend to the geographic regions where the mark's owner has earned a reputation.  It is hornbook law that the owner of common law trademark rights in an unregistered trademark is entitled to rights only in those localities where it has established actual and not de minimis use of the mark.  5 *J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition*, § 26.2.  Plaintiff's entire lawsuit fails because, as we will illustrate, Plaintiff never owned trademark rights in the geographic region where Omnia used the alleged infringing marks.

## II.    THE UNDISPUTED FACTS THAT JUSTIFY SUMMARY JUDGMENT

Plaintiff, Stone Creek Inc. ("Plaintiff"), is a locally owned and operated company in Phoenix Arizona (Statement of Undisputed Facts "SOF" No. 1). Defendant Omnia is a manufacturer of leather furniture (SOF No. 2).  In or around 2003, Omnia entered into an agreement with Plaintiff to manufacture and distribute leather sofas on behalf of Plaintiff (SOF No. 3).  This agreement did not contain a provision barring Omnia from using the Stone Creek name in other endeavors (SOF No. 4).

Defendant The Bon-Ton Stores, Inc. ("Bon-Ton")[1] operates a number of furniture galleries in Illinois, Wisconsin, Pennsylvania, Ohio, and Michigan (SOF No. 5). These stores are operated under the names, Carson's, Elder-Beerman, Bon-Ton, Boston Store and Younkers (the "Bon-Ton Furniture Galleries") (SOF No. 6).  On or about 2008, Omnia and Bon-Ton entered into an agreement which required Omnia to manufacture leather furniture for Bon-Ton which Bon-Ton would sell under a private label (the "Accused Sales") (SOF No. 7).  The name "Stone Creek" was chosen as the private label brand.  The furniture could be purchased and delivered to any consumer who resided within 200 miles of a Bon-Ton Furniture Gallery – this included portions of Iowa, Indiana, Ohio, Wisconsin,

---

[1] Bon-Ton was recently dismissed from this case.

1  Pennsylvania, Illinois and Michigan (SOF No. 8).  Those six states will be referred to as

2  the "Bon-Ton Trading Territory".  None of the Accused Sales took place in Arizona (SOF

3  No. 9).  Prior to 2008, Plaintiff had no reputation or goodwill in the Bon-Ton Trading

4  Territory (SOF No. 10).  Plaintiff obtained federal registrations in February 2012.  (SOF

5  No. 11).

6       Plaintiff has admitted that Omnia has not misappropriated any of Plaintiff's trade

7  secrets nor has it converted any of Plaintiff's property (SOF No. 12 and 13).

8  **III.   SUMMARY JUDGMENT STANDARD**

9       Summary judgment is proper where "the pleadings, depositions, answers to

10 interrogatories, and admissions on file, together with the affidavits, if any, show that there

11 is no genuine issue as to any material fact and that the moving party is entitled to a

12 judgment as a matter of law."  Fed. R. Civ. P. Rule 56(c); *Celotex Corp. v. Catrett*, 477

13 U.S. 317, 322-23 (1986).  The moving party has the burden of demonstrating the absence

14 of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

15 (1986).  If the moving party satisfies the burden, the party opposing the motion must set

16 forth specific facts, through affidavits or admissible discovery materials, showing that

17 there remains a genuine issue for trial.  *See id.*; Fed. R. Civ. P. Rule 56(c).  The dispute

18 must be genuine.  The "opponent must do more than simply show there is some

19 metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v.*

20 *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A complete failure of proof concerning an

21 essential element of the non-moving party's case necessarily renders all other facts

22 immaterial.  *Celotex*, 477 U.S. at 323.

23 **IV.   LEGAL ARGUMENT**

24

25       A.   <u>Plaintiff's Claims For Violations of the Lanham Act Fail as Plaintiff had not Acquired Trademark Rights in the Bon-Ton Trading Territory Prior to Omnia's Use of the Stone Creek Mark in the Bon-Ton Trading Territory.</u>

26

27       Plaintiff's alleged trademark rights are broken up into two different categories,

28 those existing prior to Plaintiff's federal registration and those existing after the 2012

1   federal trademark registration.  Plaintiff's first claim for relief applies to the alleged

2   infringement after February 7, 2012 (the date of the federal registration), while the second

3   claim for relief (15 U.S.C. §1125(a)) relates  to alleged infringement prior to February 7,

4   2012 of Plaintiff's alleged common law trademark rights.  As will be discussed in detail

5   below, Plaintiff's second claim for relief for violation of 15 U.S.C. §1125(a) fails as a

6   matter of law as Plaintiff's common law trademark rights did not reach into the Bon-Ton

7   Trading Territory.  Plaintiff is an Arizona based company and has no reputation or

8   goodwill in the Bon-Ton Trading Territory (SOF No. 10.).  Since Plaintiff had no

9   trademark rights in the Bon-Ton Trading Territory, its claim for infringement of non-

10  existent rights necessarily fails.  Plaintiff's first claim for relief for violation of 15 U.S.C.

11  §1114(1) (infringement of a registered mark) fails as well because Omnia used the mark

12  Stone Creek in the Bon-Ton Trading Territory prior to the issuance of Plaintiff's 2012

13  federal registrations, and thus, Omnia is not an infringer.

14

15          1.      Common Law Trademarks Are Not "Rights in Gross", Rather,
                    Trademarks Protect the Goodwill and Reputation of a Business.
16                  Plaintiff  Has no Reputation or Goodwill in The Bon-Ton Trading
                    Territory, Hence, It Has never earned any Trademark Rights in that
17                  Locale.

18          A federal trademark registration provides prima facie nationwide rights from the

19  date of the registration, however, in the absence of a registration, a plaintiff must prove its

20  trademark rights in the various geographic locales that it claims to have rights and is

21  entitled to no presumptions. *See 15 U.S.C. §1057; United Drug Company v. Theodore*

22  *Rectanus Company,* 248 U.S. 90, 98 (1918).  To establish common law trademark rights in

23  a geographical area, a plaintiff must prove that, in that territory, (1) it is the senior user of

24  the mark, and (2) it has established legally sufficient market penetration. See, *Optimal*

25  *Pets, Inc. v. Nutri-Vet, LLC,* 877 F. Supp. 2d 953, 959 (C.D. Cal. 2012); *Credit One Corp.*

26  *v. Credit One Financial, Inc.*, 661 F. Supp. 2d 1134, 1138 (C.D. Cal. 2009)("A party

27  asserting common law rights must not only establish that it is the senior user, it must also

28  show that it has 'legally sufficient market penetration' in a certain geographic market to

1  establish those trademark rights." (quoting *Glow Indus. Inc. v. Lopez*, 252 F. Supp. 2d 962,

2  983 (C.D. Cal. 2002). "Sufficient market penetration is determined by 'examining the

3  trademark user's volume of sales and growth, number of persons buying the trademarked

4  product in relation to the number of potential purchasers, and the amount of advertising' in

5  a given market." *Credit One Corp.* 661 F. Supp. 2d 1138. In other words, an appreciable

6  number of consumers in the Bon-Ton Trading Territory have to know who Plaintiff is.

                  (a)     Nearly a Century Ago, The Supreme Court Penned Two
                             Landmark Decisions That Provide Guidance for Evaluating
                             Alleged Common Law Trademark Rights.

     It has long been the rule that the mere adoption of a common law trademark does

bestow trademark rights throughout the United States. This concept was thoroughly

discussed in two prominent Supreme Court cases which were issued two years apart. The

first was *Hanover Star Milling Co,. v. Metcalf*, 240 U.S. 403, 415-416 (U.S. 1916) which

was followed two years later by *United Drug Company v. Theodore Rectanus Company*

248 U.S. 90, 98, (1918).

     In *Hanover Star Milling Co.*, 240 U.S. 415-416, the Supreme Court stated:

> Into whatever markets the use of a trade-mark has extended, or its
> meaning has become   known, there will the manufacturer or trader
> whose trade is pirated by an infringing use be entitled to protection
> and redress. But this is not to say that the proprietor of a trade-mark,
> good in the markets where it has been employed, can monopolize
> markets that his trade has never reached and where the mark
> signifies not his goods but those of another. We agree with the court
> below that since it is the trade, and not the mark, that is to be
> protected, a trade-mark acknowledges no territorial boundaries of
> municipalities or states or nations, but extends to every market
> where the trader's goods have become known and identified by his
> use of the mark. But the mark, of itself, cannot travel to markets
> where there is no article to wear the badge and no trader to offer the
> article. [internal citations omitted] [emphasis added].

     The *United Drug Company* Court further elaborated on this concept by explaining

that, "[t]here is no such thing as property in a trade-mark except as a right appurtenant to

an established business or trade in connection with which the mark is employed." *United*

*Drug Co.*, 248 U.S. 96-98. It further stated that:

DEFENDANT OMNIA ITALIAN DESIGN INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1

2
   The owner of a trade-mark may not, like the proprietor of a patented
   invention, make a negative and merely prohibitive use of it as a
3  monopoly. *United States v. Bell Telephone Co.*, 167 U.S. 224, 250;
   *Bement v. National Harrow Co.*, 186 U.S. 70, 90; *Paper Bag Patent*
4  *Case*, 210 U.S. 405, 424.

5  In truth, a trade-mark confers no monopoly whatever in a proper
   sense, but is merely a convenient means for facilitating the protection
   of one's good-will in trade by placing a distinguishing mark or
6  symbol -- a commercial signature -- upon the merchandise or the
   package in which it is sold.
7
   It results that the adoption of a trade-mark does not, at least in the
8  absence of some valid legislation enacted for the purpose, project the
   right of protection in advance of the extension of the trade, or operate
9  as a claim of territorial rights over areas into which it thereafter may
   be deemed desirable to extend the trade. And the expression,
10 sometimes met with, that a trade-mark right is not limited in its
   enjoyment by territorial bounds, is true only in the sense that
11 wherever the trade goes, attended by the use of the mark, the right of
   the trader to be protected against the sale by others of their wares in
12 the place of his wares will be sustained.

13 *United Drug Co.,* 248 U.S. 97-98.

14        These territorial principals for common law trademarks as articulated by the

15 Supreme Court nearly a century ago have remained unchanged.  Even today, a plaintiff

16 must prove (1) it is the senior user of the mark, and (2) it has established legally sufficient

17 market penetration. See, *Optimal Pets, Inc.*, 877 F. Supp. 2d 959.  In the instant case,

18 Plaintiff can show no market penetration into the Bon-Ton Trading Territory (SOF No.

19 10.)  Accordingly, Plaintiff's trademark rights do not extend into the Bon-Ton Trading

20 Territory.

                    (b)      Plaintiff's Cannot Show Any Market Penetration, Let Alone
21                           Significant Market Penetration Into The Bon Ton Trading
                             Territory
22
         As discussed above, sufficient market penetration is determined by "examining the
23
   trademark user's volume of sales and growth, number of persons buying the trademarked
24
   product in relation to the number of potential purchasers, and the amount of advertising" in
25
   a given market." *Credit One Corp. v. Credit One Fin.*, Inc., 661 F. Supp. 2d 1134, 1138
26
   (C.D. Cal. 2009).
27

28

1    Plaintiff is a local Arizona company that prides itself on selling locally
2  manufactured products to residents of Arizona.  In fact, as will be seen below, Plaintiff
3  does not even ship its goods outside of Arizona.  It has conducted no advertising
4  campaigns outside of Arizona as it only advertises in a local Phoenix magazine, on its
5  website and on its Youtube channel.  Plaintiff made no effort to survey residents of the
6  Bon-Ton Trading Territory to determine the extent of its reputation in those states, and has
7  failed to produce any evidence supporting the notion that it has realized ANY market
8  penetration in the Bon-Ton Trading Territory (SOF No. 10.)  In fact, Omnia commissioned
9  its own survey which demonstrates that no such market penetration exists..

10
11                (i)      Plaintiff Can Not Evidence Any Advertising in the Bon-
                           Ton Trading Territory

12    In discovery, Plaintiff was asked to state all of its efforts to create consumer
13  awareness of its furniture products in states other than Texas and Arizona.  Plaintiff
14  responded that, "…Stone Creek advertises its furniture products in publications distributed
15  outside the States of Texas and Arizona, including, but not limited to Phoenix Home &
16  Garden, America West, and Spirit.  Stone Creek also maintains a web site…. And a
17  YouTube channel.  (Plaintiff Stone Creek, Inc.'s Answers to Omnia Italia[n] Design, Inc.'s
18  First Interrogatories, Answer 1, Attached as Exhibit I to the concurrently filed Appendix.)
19  Plaintiff confirmed in its deposition that this was the full extent of such efforts.
20  (Deposition of Ronald Jones, Volume II ("Jones II Depo.", Exhibit "G" to the Appendix,
21  p. 17:11-17.  Taking each "advertisement" one at a time, it is clear that nothing is directed
22  at out of state consumers, and there is similarly no evidence to suggest that such
23  advertising created awareness in the Bon-Ton Trading Territory.

24    First, the advertisements in America West and Spirit magazines were discontinued
25  in 1998. (Deposition of Ronald Jones, Volume I ("Jones I Depo."), Exhibit "F", p.30:10-
26  13) Second, Plaintiff's 30b6 witness, Ron Jones, could point to no evidence at his
27
28

1   deposition that either of these advertisements resulted in any awareness of Stone Creek in

2   the Bon-Ton Trading Territory.[2]  (Jones II Depo., Exhibit "G", pp. 36:23-38:3, )

3        With regard to the Phoenix Home and Garden magazine, Plaintiff provided Omnia

4   with a report that purported to identify the circulation of the magazine. (Exhibit 3 to

5   Plaintiff's Complaint which is Attached to the Appendix as Exhibit "D".)   This circulation

6   report[3], however, is inadmissible for a variety of reasons including it lacks foundation,

7   authentication and is hearsay.  But, regardless, Mr. Jones admitted during his deposition as

8   the 30b6 witness for Plaintiff that he cannot point to any information to suggest that these

9   advertisements created consumer awareness of Stone Creek in the Bon-Ton Trading

10  Territory.

11          Q.     What information are you aware of that suggests that your
    advertisements, Stone Creek's advertisements in Phoenix Home &

12          Garden, has created any consumer awareness of Stone Creek by
    consumers in Bon-Ton's trading territory?

13          A.     I don't have any.
            (Jones II Depo., Exhibit "G", pp. 36:23-37:3.)

14

15       Finally, Plaintiff will likely argue that its website and youtube channel created

16  consumer awareness in the Bon-Ton Trading Territory.  But this argument is baseless, as

17  such would mean that everyone with a common law trademark and a website would

18  automatically have nationwide rights by the mere fact that the website is accessible to

19  anyone.  The proper analysis is <u>not</u> simply whether Plaintiff has a website, it is whether

20  that website creates consumer awareness in the Bon-Ton Trading Territory.  On this

21  question, Mr. Jones indicated that his company attempted to determine the reach of its

22  website outside of Arizona, but chose not to provide Omnia with this information because

23

24  [2] Mr. Jones did not even know if America West flew to any cities within the Bon-Ton

25  Trading Territory in 1998 and before. (Jones II Depo, Exhibit "G", p. 25:2-23

    [3] Putting aside the inadmissibility of the circulation report, on its face it notes that a very

26  small percentage of subscribers used a billing address outside of Arizona. Presumably,

    though we do not know, these are "snow birds". It is unclear, in any event, why Plaintiff

27  believes this tiny "circulation" of a local phoenix magazine to "snow birds" creates

    consumer awareness of its brand in the Bon-Ton Trading Territory.

28                               8

1 | Plaintiff deemed the results to be not important. *(*Jones II Depo., Exhibit "G" pp. 41:6-

2 | 42:5, 44:1-47:17.)  If Plaintiff had evidence to suggest its website created consumer

3 | awareness, it would have, of course, produced it.  Regardless, the fact that Plaintiff

4 | maintains a website is not evidence that it has created consumer awareness in the Bon-Ton

5 | Trading Territory.

6 |                 (ii)    Plaintiff Cannot Even Demonstrate Any Sales Into The Bon-Ton Trading Territory.

7 |     Plaintiff's website reveals why Plaintiff is unable to offer evidence that it has made

8 | sales in the Bon-Ton Trading Territory.  This local Arizona company does not even ship its

9 | products out of state.  "Stone creek does not use their own carriers to deliver out of state.

10 | Orders to be shipped to other states are 'will call' at our factory locations.  Shipping

11 | arrangements need to be setup by the customer." (Exhibit "J" to the Appendix.)  Indeed,

12 | Michelle Zamby, an interior decorator employed by Stone Creek for the past nine years

13 | (Deposition of Michelle Zamby ("Zamby Depo."), Exhibit "E", p. 10:2-25)  testified that

14 | she had never worked with anyone outside of the state of Arizona nor is she aware of

15 | anyone outside of Arizona purchasing a piece of furniture from Stone Creek.

16 |
17 |         Q.  Have you ever worked with any customers, either as a merchandiser or as an interior decorator, that lived outside of the Phoenix metropolitan area?

18 |         A.  I have clients that have two homes, but I've never helped them decorate a residence that was not here in Phoenix.

19 |         (Zamby Depo, Exhibit "E", p. 43:7-12)

20 |         Are you aware of anyone who either is not a resident of the Phoenix metropolitan area or is not a snowbird, as we've defined it -- are you aware of those types of people ever purchasing a piece of furniture from Stone Creek?

21 |         A.  No.

22 |         Q.  So like someone calls up from Chicago?

23 |         A.  No.
        ***

24 |         Q. Are you aware of anyone, any customer asking that a piece of furniture be shipped from Stone Creek to someplace outside of the State of Arizona?

25 |         "Please deliver this couch to Madison Wisconsin."

26 |         A.  Okay.  My answer to that is no.
        Now, when we build custom furniture, if we need to -- if they -- I want to answer this correctly, but -- we'll -- we will ship

27 | furniture.

28 |         I guess it wouldn't be out of Arizona, but I know we go to

1

other towns. That may be Flagstaff or Prescott. We'll do work
there. Obviously there's a delivery charge attached to that. But as far
as someone purchasing a sofa from us and delivering it out of state,
the answer to that would be no.

2

3

(Zamby Depo., Exhibit "E", p. 44:16-25; pp. 45:12-46:2.)

4

5

Mr. Jones also testified similarly:

6

Q. And why? Let me ask a better question. Why won't Stone Creek
deliver to out-of-state customers?

7

A. We only have -- our trucks only deliver locally. It's just another
way to say FOB Phoenix.

8

(Jones II Depo., Exhibit "G" p.67:16-20.)

9

Q. So with regard to, let's say, furniture items, Stone Creek, to your
knowledge, has never actually delivered furniture out of state?

10

A. We have not delivered furniture out of state in a Stone Creek
truck.

11

12

(Jones II Depo., p. 68:8-12.)

13

In discovery, Plaintiff produced a spreadsheet containing each one of its alleged

14

sales since 1996 (Exhibit "C", Lewis Decl. at ¶ 9.) In total, there were 64,527 transactions

15

(Exhibit "C", Lewis Decl. at ¶ 9.) The spreadsheet contains the "home address" of each

16

purchaser as well as a purported shipping address. Of those transactions, only roughly 160

17

have a purported "shipping address" in the Bon-Ton Trading Territory (A copy of the

18

relevant portions of the spreadsheet are attached as Exhibit "K" to the Appendix.) At

19

deposition, Mr. Jones admitted that Stone Creek never actually made any of these

20

deliveries, hence, there is no way of confirming whether the "shipping addresses" are even

21

valid or that such evidences purchases by out of state residents. (Jones II Depo., Exhibit

22

"G", pp.66:15-68:22.) The Court did not permit Omnia the opportunity to verify the

23

validity of Plaintiff's spreadsheet [Docket Entry No. 72], however, such is not necessary as

24

Plaintiff itself has confirmed that it does not know whether any products were actually

25

shipped to these states.[4]

26

27

[4] Even assuming for the sake of argument that each of these transactions since 1996 were
made to people in the Bon Ton Trading Territory who actually learned about Stone Creek

28

through some kind of advertisement that reached the Bon-Ton Trading Territory, this is

1
2

        (iii)    Plaintiff Failed to Conduct a Survey, And Omnia's
                Survey Illustrates That Consumers in the Bon-Ton
                Trading Territory Have No Consumer Recognition of
                Stone Creek.

3      As can be seen above, Plaintiff provided Omnia with no evidence that is has

4  achieved any reputation or goodwill through its sales or advertising in the Bon-Ton

5  Trading Territory.  With that said, Plaintiff could have tried to meet its burden by

6  commissioning a survey to show that its reputation and goodwill had travelled into the

7  Bon-Ton Trading Territory even with a lack of sales and advertising, however, despite

8  having the financial means to do so, Plaintiff did not.

9

10
11
12

      Q. Mr. Jones, very simple question, could you afford to do a
      consumer survey that costs 30- to $40,000 to support your case?
      Very simple.  Could you afford it?  Could Stone Creek afford it?
      A. I'm sure I could.
      (Jones II Depo., Exhibit "G" p. 106:17-21)

13

14     This failure to conduct a survey, despite having the financial ability to do so, can

15  lead to an inference that the results of such a survey would have been unfavorable. *Cairns*

16  *v. Franklin Mint. Co.,* 24 F.Supp.2d 1013, 1041 (C.D.Cal. 1998).

17     Despite Plaintiff having the burden of proving recognition in the Bon-Ton Trading

18  Territory, Defendants undertook the task of proving a negative.  Omnia commissioned its

19  own survey which was outlined in the expert report of Charles D. Cowan Ph.D.  Dr. Cowan

20  found that "the survey results illustrate that the Plaintiff's brand or trademark "Stone

21  Creek" is not recognized by Consumers [in the Bon-Ton Trading Territory]… Consumers

22  [in the Bon-Ton Trading Territory] have no knowledge of Plaintiff, do not recognize

23  Plaintiff or its trademark or brand and have no knowledge of what Plaintiff sells." (A copy

24  of Dr. Cowan's Report is attached as Exhibit "L", ¶¶ 6 and 7.)  In fact, with regard to the

25  critical question of the survey, question three, which asked consumers in the Bon-Ton

26  Trading Territory to spontaneously list the names of furniture companies, not a single

27
28

such a de minimis level of sales that it doesn't come close to establishing that Plaintiff has
consumer recognition in the Bon-Ton Trading Territory.

1  participant said Stone Creek. This, along with other factors, caused Dr. Cowan to opine

2  that "[I]n sum, there is no valid association by Consumers of the name "Stone Creek" with

3  Plaintiff in the Bon-Ton Trading Territory. (Exhibit "L" p. 9.)

4      On a final note, Plaintiff could have spoken to its customers who allegedly live out

5  of state directly in an effort to obtain some evidence of consumer recognition in the Bon-

6  Ton Trading Territory, however, it refused to do so. Mr. Jones' deposition transcript sums

7  up Plaintiff's inability to demonstrate consumer recognition in the Bon-Ton Trading

8  Territory:

9          Q.    Did you do anything since this lawsuit was filed to make an
effort to identify whether any of the consumers who were identified

10          on Exhibit 24, whether any of these consumers learned about you
through your marketing efforts that may have extended outside of

11          the state of Arizona? Did you make any efforts to find out if that
were the case?

        A.    No.

12  (Jones II Depo., Exhibit "G", p. 97:4-11)

13          (c)    Because Plaintiff Cannot Demonstrate Any Trademark Rights
in The Bon-Ton Trading Territory, Good Faith Is Not an

14          Element of the Defense.

15      While subjective good faith in adopting a mark is an element of the Tea Rose

16  Rectanus defense (discussed *Infra*), it is not necessary here as Plaintiff cannot demonstrate

17  any trademark rights in the Bon-Ton Trading Territory.[5] *Optimal Pets, Inc. v. Nutri-Vet*,

18  LLC, 877 F. Supp. 2d 953, 965 (C.D. Cal. 2012).

19          2.    Plaintiff's Claim  Under 15 U.S.C. §1114 Fails.

20      On June 2, 2011, Plaintiff applied for and received two federal trademark

21  registrations for Stone Creek. The registrations issued on February 7, 2012. (SOF No.

22  11.)At the point of registration, Plaintiff acquires nationwide rights in its trademark,

23  however, contrary to Plaintiff's position, these registrations do not turn Omnia's legal use

24  of the stone creek mark prior to the registration into an infringement after the registration.

25  In fact, these presumptive nationwide rights are subject to a prior use defense.  As

26  McCarthy states in a section entitled 'Federal Registration Does Not Trump Prior Use',

27

28  [5] As outlined below, Omnia did select the mark in good faith, however.

1   "Neither application for nor registration of a mark at the federal level wipes out the prior

2   non-registered, common law rights of others... the non-registered rights of those who used

3   a conflicting mark *prior* to the registration date are expressly preserved by the Lanham

4   Act." (5 *J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition*, §

5   26.31.)  As stated in 15 U.S.C. §1115(a),  "[a federal registration] shall not preclude

6   another person from proving any legal or equitable defense or defect, including those set

7   forth in subsection (b), which might have been asserted if such mark had not been

8   registered."  Thus, because the statute provides Omnia with any defense it could have

9   asserted if "such mark had not been registered", and because, as discussed previously,

10  without a federal registration Plaintiff has no trademark rights in the Bon-Ton Trading

11  Territory, Omnia can not be an infringer even after the registration issues.[6]  There is no

12  need to examine any other common law defenses Omnia may have.  Regardless, there is an

13  additional defense which Omnia may rely on: the Tea Rose-Rectanus defense—which

14  Omnia will brief below.

15

16              (a)     The Tea Rose-Rectanus Defense

17          The Tea Rose-Rectanus doctrine emerged as a result of the two Supreme Court

    cases discussed in detail above.  It is applicable when a senior user attempts to expand its
18
    rights into a territory that a junior user already occupies.[7]  A clear majority of the cases
19
    applying the common law Tea Rose-Rectanus doctrine hold that in order to establish the
20
    defense, the junior user must prove both of two elements: (1) its first use was in 'good
21
    faith' and (2) its first use was in a remote area. 4 *J. Thomas McCarthy, McCarthy on*
22

23
    _____
24  [6] While not related to this motion, Omnia and Bon-Ton no longer uses the Stone Creek
    Mark.
25  [7] It should be noted that this defense is not the same defense used to defeat Plaintiffs
    1125(a) claims as prior to its federal registration, Plaintiff had no trademark rights in the
26  Bon-Ton Trading Territory. Accordingly, it is axiomatic that Defendant could not infringe
    non-existent rights. While this same logic is applicable to absolve Omnia of liability for
27  infringement of the Federal Trademark, Omnia is briefing the Tea Rose-Rectanus Doctrine
    out of an abundance of caution.
28  4820-0685-9802.1                                    13

1 | *Trademarks and Unfair Competition*, § 26.4 (rev. ed. 2003); *Thrifty Rent-A-Car System v.*
2 | *Thrift Cars Inc.,, Inc.*, 639 F. Supp. 750 (D. Mass. 1986), aff'd, 831 F.2d 1177 (1st Cir.
3 | 1987). *Hispanic Broad. Corp. v. Educ. Media Found.*, 2003 U.S. Dist. LEXIS 24804 (C.D.
4 | Cal. Oct. 30, 2003).

5 |                   (i)     Omnia Selected the Mark in Good Faith

6 |       While there is a split in authority as to the definition of good faith under the Tea-
7 | Rose Rectanus doctrine, the Restatement, as well as other lower Courts in the Ninth Circuit
8 | have adopted the position that the most appropriate question is whether Defendant selected
9 | the mark in order to plunder the Plaintiff's good-will.  *Restatement (Third) of Unfair*
10 | *Competition* § 19 (1995) states that, "the rule…does not accord conclusive significance to
11 | the subsequent user's knowledge of the prior use."  While knowledge is a critical factor, a
12 | more accurate test is whether the junior user intends or expects that his use will "create,
13 | either immediately or in the future, a likelihood of confusion with the goods, services or
14 | business of the prior user" *Id*.  Furthermore, in *Bright Beginnings v. Care Comm.*, 1994
15 | U.S. Dist. LEXIS 17914, 10-11 (C.D. Cal. Feb. 28, 1994) the court stated, "It cannot be
16 | denied, however, that the underlying concern of the Hanover and Rectanus cases [the
17 | Supreme Court cases] was avoiding a junior user's plundering of the senior user's good-
18 | will, and the reasoning underlying those cases dictates that the critical date is the date of
19 | initial adoption."  These definitions are inline with the Supreme Court's holding that:

> "where two parties independently are employing the same mark
> upon goods of the same class, but in separate markets wholly remote
> the one from the other, the question of prior appropriation is legally
> insignificant, unless at least it appear that the second adopter has
> selected the mark with some design inimical to the interests of the
> first user, such as to take the benefit of the reputation of his goods, to
> forestall the extension of his trade, or the like."

24 | *Hanover Star Milling Co,. v. Metcalf*, 240 U.S. 415.

25 |      In other words, in order to show a lack of good faith, Plaintiff must demonstrate that
26 | the mark was selected in order to trade off of Plaintiff's good will and reputation in the
27 | Bon-Ton Trading Territory.  Of course, Omnia could not have chosen the Stone Creek

28 |

4820-0685-9802.1                 14

1  mark in bad faith as there was no goodwill to plunder in the Bon-Ton Trading Territory

2  (SOF No. 10.)[8]

3                       (ii)     Omnia's Use of the Stone Creek Mark Was Remote.

4        This requirement is easily dispensed with as the Bon-Ton Trading Territory is

5  wholly remote from Arizona.  Plaintiff has never expanded its operations to include the

6  Bon-Ton Trading Territory (even since its federal registration issued) and it has provided

7  no evidence that it plans on expanding into the Bon-Ton Territory.   Omnia's use thus

8  qualifies as remote.

9        Because Omnia was a good faith remote user, the Tea Rose Rectanus defense is

10  applicable to defeat a claim of federal trademark infringement.

11

      B.     <u>Omnia Is Not Liable For Common Law Trademark Infringement Nor Unfair</u>

12              <u>Competition As Plaintiff had no rights in the Bon-Ton Trading Territory.</u>

13        While it is unclear exactly what common law trademark rights Plaintiff complains

14  were infringed, it is clear that Plaintiff had no common law rights in the Bon Ton Trading

15  Territory.  (SOF No. 10.)  Since Omnia's sales all occurred in the Bon-Ton Trading

16  Territory, it could not have infringed any of Plaintiff's common law trademark rights.

17  (SOF Nos. 8, 9.)

      C.     <u>Omnia Is Not Liable For State Trademark Infringement Under A.R.S. §44-</u>

18              <u>1441As None of the Accused Sales Occurred in Arizona.</u>

19       Section 44-401 states:

20           "The owner of a mark registered under this article may proceed by
         civil action against any person who, without the consent of the

21           registrant:

22           1. **Uses in this state** the registered mark or a mark similar to the
         registered mark on or in connection with any goods or services or any

23           container for goods in any manner that is likely to cause confusion,
         cause a mistake or deceive a person as to either:

24

25

26  [8] In the alternative to a complete defense of all the claims, and should any claim survive,
Omnia requests that the Court find that Omnia selected the mark in good faith.  There are

27  no genuine issues of material fact regarding the good faith selection of the mark as Omnia
could not have sought to plunder Plaintiff's goodwill and reputation in the Bon-Ton

28  Trading Territory as none existed.

1      (a) The affiliation, connection or association of the person with
    another person.

2      (b) The origin, sponsorship or approval of the goods, services or
    commercial activities by the owner of the registered mark.

3      While Plaintiff does have a registered trademark in the state of Arizona, Omnia did

4  not use Plaintiff's trademark in the state of Arizona. (SOF Nos. 8, 9.)  None of the

5  Accused Sales occurred in Arizona, hence, there can be no violation of this statute.

6

7      D.    <u>Plaintiff Has Admitted that Omnia Did Not Misappropriate any of Its Trade
Secrets, Hence, Omnia Is Not Liable For Violation of the Arizona Trade
Secret Law (A.R.S. §44-401)</u>

8

9      Plaintiff has acknowledged that Omnia has not misappropriated any of Plaintiff's

10  trade secrets.  (SOF No. 12)

11      E.    <u>Plaintiff Has Admitted that Omnia Did Not Convert Any Of Its Physical
Property, Hence, Omnia Can Not Be Liable For Causes of Action Seven
Through Ten.</u>

12

13      Plaintiff's seventh through tenth cause of action all relate to Plaintiff's contention

14  that Omnia converted property of Plaintiff.  A cause of action for conversion in Arizona

15  requires, "an intentional exercise of dominion or control over a chattel which so seriously

16  interferes with the right of another to control it that the actor may justly be required to pay

17  the other the full value of the chattel." *Focal Point v. U-Haul Co.*, 155 Ariz. 318, 319

18  (Ariz. Ct. App. 1986).  Plaintiff has admitted that Omnia did no such thing (SOF No. 13.)

19      Additionally, with regard to counts nine and ten, unjust enrichment is a type of

20  damage, it is not an independent tort.

21      F.    <u>Plaintiff Has Admitted That There Was No Contract Preventing Omnia From
Using The Stone Creek Name, Accordingly, Plaintiff's Breach Of Contract
Claim Fails.</u>

22

23      Plaintiff's final causes of action both relate to the allegation that Omnia breached its

24  contractual obligations with Plaintiff.  In deposition, Mr. Jones admitted that the only

25  contract between the parties were a series of invoices and purchase orders, none of which

26  contained a term prohibiting Omnia from using the Stone Creek trademark.  (SOF No. 4.)

27  This was confirmed by Mr. Jones at his depo:

28

1
2
3
4
5
6

> Q.  So the terms of your agreement with Omnia are that Omnia is going to sell you the product that you order and in return you're going to pay for it.  Those are the terms of your agreement with Omnia; right?
> A.  Basically, yes.  In a reasonable time period and --
> Q.  Are there any --
> A.  Well, a product in a specific leather in a configuration in a reasonable time expectation in consideration for an amount of money.
> Q.  Any other terms that you can think of that were part of Omnia and Stone Creek's agreement?
> A.  That is it.

7  (Jones II Depo. 113:5-17.)

8     Because there are no other claims for breach of contract, other than the use of the

9  Stone Creek mark, this claim fails.

10     G.     Omnia Did Not Breach Any Implied Covenant of Good Faith As Plaintiff Received The Benefit Of the Bargain.

11     Finally, Arizona law recognizes that, "a party can breach the implied covenant of

12  good faith and fair dealing both by exercising express discretion in a way inconsistent with

13  a party's reasonable expectations and by acting in ways not expressly excluded by the

14  contract's terms but which nevertheless bear adversely on the party's reasonably expected

15  benefits of the bargain." *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 424 (Ariz. Ct. App.

16  2002).  The contract between the parties consists of purchase orders and invoices.  (SOF

17  Nos. 3 and 4.)  There has been no evidence that Plaintiff did not receive the benefit of the

18  bargain with regard to the operative contract.

19  V.     **CONCLUSION**

20     For the foregoing reasons, Omnia should be granted summary judgment in its favor

21  on all counts.

22

23  DATED: March 28, 2014          LEWIS BRISBOIS BISGAARD & SMITH LLP

24                                 By:  ___/s/ Daniel C. DeCarlo_____

25                                 Daniel C. DeCarlo
                                   Attorneys for Omnia Italian Design, Inc.

26

27

28

DEFENDANT OMNIA ITALIAN DESIGN INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on March 28, 2014, I electronically transmitted the foregoing

3   document to the Clertk of the Court using the ECF System for filing and tramsitttal of a

4   Notice of Electronic Filing to the following EECF registrants:

5

6   Corey M. Eschweiler
    Adam D. Smith
7   Glen F. Lerner & Associates
    4795 S. Durango Dr.
8   Las Vegas, NC 89147
    *Attorneys for Plaintiff Stone Creek, Inc.*
9
    Mark Douglas Chester
10  Ryan Anthony Houser
    Chester & Shein PC
11  8777 N. Gainey Cetner Dr., Ste 191
    Scottsdale, AZ 85258
12  *Attorneys for Plaintiff Stone Creek, Inc.*

13      */s/ Daniel R. Lewis*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28