IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stone Creek Incorporated,<br><br>    Plaintiff,<br><br>v.<br><br>Omnia Italian Design Incorporated, et al.,<br><br>    Defendants. | No. CV-13-00688-PHX-DLR<br><br>**ORDER** |

Before the Court are Defendant Omnia Italian Design Inc.'s Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment (Doc. 79) and Plaintiff Stone Creek Inc.'s Motion for Partial Summary Judgment (Doc. 81).[1]  The Court has considered the motions, the responses, the replies, the corresponding statements of facts, and the objections thereto.  For the following reasons, Defendant's Motion for Summary Judgment is granted in part and denied in part, and Plaintiff's Motion for Partial Summary Judgment is granted in part and denied in part.[2]

---

[1] Preliminarily, in its motions and statements of facts Plaintiff placed all citations to case law and the record in footnotes.  This is discouraged, as footnote citations make the Court's review much more difficult and time-consuming.  The parties are instructed, going forward, not to place citations to case law or the record in footnotes.

[2] The request for oral argument is denied because oral argument will not assist the Court in reaching its decision.  *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

## BACKGROUND

Plaintiff is a locally owned and operated furniture company in Phoenix, Arizona. (Docs. 80, 85 at ¶ 1.) Plaintiff markets its products using the label "STONE CREEK," written in all capital letters and surrounded by a stylized, red oval ("the Stone Creek mark" or "the mark"). (Doc. 94 at ¶ 2, Doc. 1 at Ex. 1). Plaintiff first adopted and used the Stone Creek mark in 1990. (Doc. 94 at ¶ 1, Doc. 1 at Ex. 1). Plaintiff obtained federal registration of the mark on February 7, 2012. (Docs. 80, 85 at ¶ 11; Doc. 1, Ex. 1.)

Defendant is a California-based manufacturer of leather furniture. (Docs. 80, 85 at ¶ 2.) In 2003, Defendant entered into an Agreement with Plaintiff to manufacture and distribute leather sofas on Plaintiff's behalf. (Docs. 80, 85 at ¶ 3.)

The Bon-Ton Stores, Inc. ("Bon-Ton") operates furniture galleries in Illinois, Wisconsin, Pennsylvania, Ohio, and Michigan. (Docs. 80, 85 at ¶ 5.) In 2008, Defendant and Bon-Ton entered into an agreement under which Defendant would manufacture leather furniture for Bon-Ton under a private label ("the Accused Sales"). (Docs. 80, 85 at ¶ 7.) The furniture could be purchased and delivered to customers who resided within 200 miles of a Bon-Ton Furniture Gallery. This area included portions of Iowa, Ohio, Wisconsin, Pennsylvania, Illinois, and Michigan (collectively "the Bon-Ton Trading Territory").[3] (Docs. 80, 85 at ¶ 8.) None of the Accused Sales occurred in Arizona. (Docs. 80, 85 at ¶ 9.)

Although Defendant did not utilize any of Plaintiff's furniture designs or specifications, (Docs. 80, 85 at ¶ 12), Defendant utilized the Stone Creek mark as the private label for the Accused Sales. (Docs. 82, 91 at ¶¶ 23-26.) Defendant decided to use the Stone Creek mark as Bon-Ton's private label partly because it had marketing materials readily available. (Docs. 82, 91 at ¶ 26.) Defendant recreated the mark using old documents containing the Stone Creek mark. As a result, the private label designed

---

[3] Plaintiff contends the Bon-Ton Trading Territory includes California because Defendant manufactured and sold the furniture from there. (Doc. 85 at ¶ 10.)

1. for Bon-Ton was identical to the Stone Creek mark Plaintiff provided to Defendant.
2. (Docs. 82, 91 at ¶¶ 24-27.) Defendant never obtained Plaintiff's permission to use the
3. mark, nor did Defendant research where Plaintiff sold its furniture or where its customers
4. were located prior to adopting the mark for the Accused Sales. (Docs. 82, 91 at ¶¶ 28-
5. 29.)
6. After discovering Bon-Ton's use of the Stone Creek mark, Plaintiff sued
7. Defendant under various theories of trademark infringement, contract, and tort. (Doc. 1.)
8. Defendant moved for summary judgment on all claims. Plaintiff moved for partial
9. summary judgment on its first three causes of action—claims for federal and common
10. law trademark infringement and Lanham Act unfair competition.

## LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Anderson*, 577 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

## DISCUSSION

**I. Trademark Infringement and Lanham Act Unfair Competition (Counts I, II, and III)**

1  Plaintiff asserts claims for federal and common law trademark infringement and
2  Lanham Act unfair competition. Federally-registered trademarks are protected against
3  infringement by 15 U.S.C. § 1114(1). Unregistered trademarks are protected by 15
4  U.S.C. § 1125(a) (also known as Section 43(a) of the Lanham Act). *See Two Pesos, Inc.*
5  *v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("[Section] 43(a) protects qualifying
6  unregistered trademarks . . . ."); *New W. Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194,
7  1198 (9th Cir. 1979) ("To recover for a violation of this section it is not necessary that a
8  mark . . . be registered."). This section grants essentially the same protection to
9  unregistered trademarks as to registered trademarks. *Two Pesos*, 505 U.S. at 776
10 (Stevens, J., concurring). To prevail on its trademark infringement and unfair
11 competition claims, Plaintiff must show: (1) it owns a valid mark; (2) the mark was used
12 without its consent and; (3) such unauthorized use is likely to cause confusion. *Credit*
13 *One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009).

14 **A. Ownership of the Stone Creek Mark**

15 **i. Federal Registration**

16 Federal registration of a trademark is prima facie evidence of the mark's validity
17 and of the registrant's exclusive ownership of and right to use the mark. 15 U.S.C. §
18 1057(b); *Brookfield Commc'ns, Inc., v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1047 (9th
19 Cir. 1999). However, federal registration does not preclude an alleged infringer from
20 proving any legal or equitable defense that might have been asserted prior to registration.
21 15 U.S.C. § 1115(a). One such defense is continuous, good-faith prior use. A party
22 charged with infringement will not be liable if it proves it adopted and continuously used
23 the mark prior to its registration without knowledge of the registrant's prior use. 15
24 U.S.C. § 1115(b)(5). If such is the case, the non-registrant is permitted to use the mark
25 free from interference within the area in which it continuously and in good faith used the
26 mark prior to its registration. *Id.*; *see also* 5 J. Thomas McCarthy, *McCarthy on*
27 *Trademarks and Unfair Competition* § 26.31 (4th ed. 1996) ("Neither application for nor
28 registration of a mark at the federal level wipes out the prior non-registered, common law

1  rights of others . . . . [T]he non-registered rights of those who used a conflicting mark
2  *prior* to the registration date are expressly preserved by the Lanham Act.").

3  It is undisputed that Plaintiff obtained federal registration for the Stone Creek
4  mark on February 7, 2012. (Docs. 80, 85 at ¶ 11; Doc. 1, Ex. 1.) Thus, Plaintiff acquired
5  exclusive nationwide trademark rights to the Stone Creek mark as of the date of
6  registration, except against those with common law rights to the mark prior to its
7  registration. Defendant contends it is not liable for trademark infringement because, prior
8  to obtaining federal registration of the mark, Plaintiff had no common law trademark
9  rights in the Bon-Ton Trading Territory. The Court understands Defendant's argument to
10 be that, prior to the mark's registration, Defendant acquired common law rights to the
11 mark in the Bon-Ton Trading Territory. Resolution of the ownership question is
12 contingent, then, upon the parties' common law trademark rights prior to federal
13 registration.

### ii. Priority of Use

15 The basic rule governing common law trademark ownership is priority of use. *See*
16 *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 100 (1918) ("Undoubtedly, the
17 general rule is that, as between conflicting claimants to the right to use the same mark,
18 priority of appropriation determines the question."). Although federal registration grants
19 the registrant superior trademark rights everywhere (subject to certain legal and equitable
20 defenses), exclusive ownership of an unregistered trademark is territorially limited. *Id.*
21 (noting the general priority of use rule "does not extend to a case where the same trade-
22 mark happens to be employed simultaneously by two manufacturers in different markets
23 separate and remote from each other"). Rights to an unregistered trademark reach only to
24 territory in which the mark is known and recognized. *Hanover Star Milling Co. v*
25 *Metcalf*, 240 U.S. 403, 415-16 (1916); *McCarthy on Trademarks and Unfair Competition*
26 § 26.2.

It is undisputed that Plaintiff first adopted and began using the Stone Creek mark in 1990 and, therefore, is the senior user.[4] (Doc. 94 at ¶ 1, Doc. 1 at Ex. 1) Instead, the parties dispute the territorial reach of Plaintiff's rights to the mark prior to federal registration. Defendant argues Plaintiff's common law trademark rights did not extend into the Bon-Ton Trading Territory because Plaintiff had not sold nor developed a reputation in those areas. As explained below, the territorial limitations of Plaintiff's common law trademark rights are governed by the Tea Rose-Rectanus doctrine.

### a. The Tea Rose-Rectanus Doctrine

Under the Tea Rose-Rectanus doctrine, a senior user cannot prevent the use of a similar mark by a good-faith, junior user if the junior user was the first to use the mark in a location remote from the senior user's territory. *See United Drug*, 248 U.S. at 100; *McCarthy on Trademarks and Unfair Competition* § 26.2. Central to the Tea Rose-Rectanus doctrine is that the remote junior user's adoption and use of the contested mark be in good faith. *Thrifty Rent-a-Car Sys. Inc., v. Thrift Cars, Inc.*, 639 F. Supp. 750, 753 (D. Mass. 1986) *aff'd* 831 F.2d 1177 (1st Cir. 1987) ("The essence of the [Tea Rose-Rectanus doctrine], then, is that two parties who innocently adopt similar trademarks and use them in separate markets carve out territories for themselves. Within its territory, each party can use its mark free from interference by the other."). The remoteness prong prevents a senior user from monopolizing the mark in areas where it does no business, but the good-faith prong ensures that a junior user is not rewarded for knowingly appropriating the senior user's mark. *Bright Beginnings Inc. v. Care Comm Inc.*, No. CV 93-1676 ER, 1994 WL 237356, *4 (C.D. Cal. Feb. 28, 1994). Thus, a senior user may assert superior rights as against an *innocent* junior user only in areas where the senior user has developed a reputation, but may assert superior rights as against a *non-*

---

[4] A senior user is the first in the country to adopt and use the trademark. A junior user is the second in the country to adopt and use the trademark, even though the junior user might be the first in time within a given territory. *McCarthy on Trademarks and Unfair Competition* § 26.1; *see Brookfield*, 174 F.3d at 1047 ("The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion.").

- 6 -

*innocent* junior user regardless of the area in which the junior user employs the mark.

In this context, the Court understands Defendant's position to be that the Bon-Ton Trading Territory is sufficiently remote to protect its concurrent use of the Stone Creek mark there. The Court recognizes that there appears to be a genuine factual dispute over whether or to what extent Plaintiff sold or advertised in, or otherwise penetrated the Bon-Ton Trading Territory. However, the Tea Rose-Rectanus doctrine only protects good-faith remote use. *McCarthy on Trademarks and Unfair Competition* § 26.4 ("A clear majority of the cases applying the common law Tea Rose-Rectanus doctrine hold that in order to prove the defense, the junior user must prove both of two elements: (1) its first use was in 'good faith;' and (2) its first use was in a 'remote area.'"). Although Plaintiff's presence in or absence from the Bon-Ton Trading Territory is relevant to determining whether the location in which Defendant used the mark was sufficiently remote, the market penetration dispute is immaterial to the ownership issue if, as a matter of law, Defendant adopted and used the Stone Creek mark in bad faith. *See Tuccillo v. Geisha NYC, LLC*, 635 F. Supp. 2d 227, 246-47 (E.D.N.Y. 2009) (noting junior user never developed common law rights in unregistered trademark because it adopted and used the mark in bad faith); *Johanna Farms, Inc. v. Citrus Bowl, Inc.,* 468 F. Supp. 866, 876 (E.D.N.Y. 1978) ("If it is found that the junior user did not adopt the mark in good faith, he will not be accorded the right to exploit the mark, even in areas previously untouched by the senior user.").

In a majority of jurisdictions, the junior's knowledge of the senior's use defeats good faith. *See Tuccillo*, 635 F. Supp. 2d at 246-47 ("Because the Court has made the factual finding that Tuccillo was *aware* of Geisha's use of the mark when he copied it, he did not have the requisite good faith when he adopted the mark, even assuming *arguendo* that Geisha's trademark rights under the common law had not yet extended to New York."); *Woman's World Shops Inc. v. Lane Bryant Inc.*, 5 U.S.P.Q.2d 1985, *3 (T.T.A.B. 1988) ("Where a junior user appropriates a mark with knowledge that it is actually being used by another, that use is not believed to be a good faith use . . . .");

- 7 -

1   *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 674 (7th Cir. 1982) ("A good faith
2   junior user is one who begins using a mark with no knowledge that someone else is
3   already using it."); *Johanna Farms*, 468 F. Supp. at 877 ("[I]f a junior's use of a mark in
4   the face of constructive notice of the senior's use by virtue of the federal registration of
5   the mark negates an inference of good faith, then actual notice of another's claim to the
6   mark must demand a similar conclusion." (internal citation omitted)); *McCarthy on
7   Trademarks and Unfair Competition* § 26.9 ("The majority of case law and commentary
8   adopt the view that proof the junior user's knowledge of the senior user's mark at the
9   critical date is sufficient to destroy the 'good faith' element of the territorial defense.").

10   In a minority of jurisdictions, the junior's knowledge of the senior's use is strong
11  evidence and permits an inference of bad faith, but does not necessarily preclude a
12  finding of good faith.  *See C.P. Interests, Inc., v. Cal. Pools, Inc.*, 238 F.3d 690, 700 (5th
13  Cir. 2001) (noting the Fifth Circuit adheres to the view that "knowledge of use is but one
14  factor in a good faith inquiry"); *GTE Corp. v. Williams*, 904 F.2d 536, 541 (10th Cir.
15  1990) ("While a subsequent user's adoption of a mark with knowledge of another's use
16  can certainly support an inference of bad faith, mere knowledge should not foreclose the
17  inquiry." (internal citations omitted)); *ACCU Pers., Inc. v. AccuStaff, Inc.*, 846 F. Supp.
18  1191, 1211 (D. Del. 1994) ("[A] junior user's prior knowledge of a senior user's
19  trademark use is probative of, but not dispositive of, the question whether the junior user
20  acted in bad faith."); *McCarthy on Trademarks and Unfair Competition* § 26.10 ("The
21  minority view of cases and commentary is that while the junior user's knowledge alone
22  of the senior use does not destroy the possibility of good faith, it is an important and
23  weighty piece of evidence.").  Under the minority view, "the ultimate focus is on whether
24  the second user had the intent to benefit from the reputation or goodwill of the first user."
25  *GTE Corp.*, 904 F.2d at 541.

26   It is undisputed that Defendant knew of Plaintiff's use of the mark at the time
27  Defendant appropriated it for Bon-Ton's private label.  Defendant admits it copied the
28  Stone Creek mark from materials already on hand from its prior dealings with Plaintiff.

1 (Docs. 82, 91 at ¶¶ 23-27.)  Plaintiff encourages the Court to adhere to the majority view, under which Defendant, as a matter of law, is not a good-faith junior user.  Defendant, however, urges the Court to adopt the minority approach.  Defendant relies on *Bright Beginnings Inc., v. Care Comm, Inc.*, No. CV 93-1676 ER, 1994 WL 237356, *4 (C.D. Cal. Feb. 28, 1994), wherein the district court noted:

> [I]t is the majority rule that it is not necessary to show a "design inimical" to defeat the remote junior user defense; however, that rule simply recognizes the difficulty in proving a "design inimical," and permits an inference of bad faith from a finding of knowledge on the part of the junior user.  It cannot be denied, however, that the underlying concern of the *Hanover* and *Rectanus* cases was avoiding a junior user's plundering of the senior user's good-will . . . .

However, the district court later found the defendant qualified as a good-faith remote junior user because "there is absolutely no evidence that defendant had any knowledge of plaintiff . . . ."  *Id.* at *5; *see also E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 606 (9th Cir. 1983) ("Neither E-Systems nor Monitek had actual knowledge of the other's existence . . . .  Monitek adopted and used its trademark . . . in good faith, without any actual knowledge of the existence of the 'Monitek' . . . trademark . . . .").

The Court finds the majority view is the better view and agrees with the *Johanna Farms* court that if constructive notice of a senior's use by virtue of federal registration defeats an inference of good faith, then, in the absence of a registered mark, *actual knowledge* of a senior's use of the mark requires a similar conclusion.  468 F. Supp. at 877.  This result is reinforced by the Lanham Act's requirement that, to be protected, a junior user's adoption of a senior's mark occur "without knowledge of the registrant's prior use."  15 U.S.C. § 1115(b)(5); *see Two Pesos*, 505 U.S. at 776 (Stevens, J., concurring) (noting that under the Lanham Act unregistered trademarks receive essentially the same protection as those that are registered).  There being no dispute that Defendant adopted the Stone Creek mark with full knowledge of Plaintiff's senior use, Defendant was a non-innocent remote user.  As such, Defendant acquired no common

- 9 -

law trademark rights in the Bon-Ton Trading Territory. Accordingly, Plaintiff's senior use and subsequent registration establish, as a matter of law, its ownership of the Stone Creek mark.

### B. Permission to Use

It is undisputed that Defendant did not obtain Plaintiff's permission to use the Stone Creek mark for Bon-Ton's private label. (Docs. 82, 91 at ¶ 28.)

### C. Likelihood of Confusion

Likelihood of confusion is the core element of trademark infringement. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). "Likelihood of confusion exists when customers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987) (internal quotations and citations omitted). The Ninth Circuit has identified eight factors that assist in determining the likelihood of confusion: (1) the similarity of the marks; (2) the relatedness of the goods; (3) the marketing channels used; (4) the strength of the mark; (5) Defendant's intent in selecting the mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000); *Official Airline Guides, Inc. v. Gross*, 6 F.3d 1385, 1391 (9th Cir. 1993). This eight-factor test is a pliant one. *Brookfield*, 174 F.3d at 1054. "Although some factors—such as the similarity of the marks and whether the two companies are direct competitors—will always be important, it is often possible to reach a conclusion with respect to the likelihood of confusion after considering only a subset of the factors." *Id.* Furthermore, the list is not exhaustive, and "non-listed variables may often be quite important." *Id.* Because the likelihood of confusion inquiry is flexible and fact-intensive, however, courts are generally reluctant to decide the issue at the summary judgment stage, and summary judgment based on likelihood of confusion

is generally disfavored. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012).

The similarity of the marks is critical to the likelihood-of-confusion analysis. *GoTo.com,* 202 F.3d at 1205. The greater the similarity, the greater the likelihood of confusion. *Id.* This factor weighs heavily in favor of Plaintiff because it is undisputed that Defendant appropriated an identical mark. Additionally, related goods are more likely than unrelated goods to cause consumer confusion. *Brookfield*, 174 F.3d at 1055. This factor, too, weighs heavily in favor of Plaintiff. The goods consist of leather furniture manufactured by Defendant on behalf of furniture galleries. Not only are the goods of the same type, but they are also produced by the same manufacturer, and sold and distributed in essentially the same manner. When identical marks are used with identical products, confusion is exceedingly likely. *Id.*

Nevertheless, genuine factual disputes touch on several of the remaining factors. Specifically, the parties genuinely dispute whether Plaintiff was known or ever sold to consumers in the Bon-Ton Trading Territory or was likely to expand into the Bon-Ton Trading Territory, (Docs. 80, 85 at ¶ 10), whether or to what extent Plaintiff marketed to consumers in the Bon-Ton Trading Territory, (Docs. 80, 85 at ¶ 10; Docs. 91, 94 at ¶¶ 5-13), and whether the evidence reveals actual customer confusion resulting from the concurrent use of the mark, (Docs. 91, 94 at ¶¶ 33, 36-41). Further, consumer recognition of the Stone Creek mark is relevant to determining the strength of the mark. *See GoTo.com*, 202 F.3d at 1207 (noting that strength of a mark is evaluated in terms of its conceptual and commercial strength). Although the marks and goods are identical, the fact finder should determine whether resolution of the aforementioned factual disputes eliminates any real likelihood of consumer confusion. Accordingly, the Court grants partial summary judgment in favor of Plaintiff as to its ownership of the mark and Defendant's lack of permission to use it, but denies summary judgment for either party as to Defendant's ultimate liability under Counts I, II, and III due to factual disputes

1 surrounding the marketing channels used, the likelihood of expansion into other markets,
2 consumer recognition of the mark, and evidence of actual confusion.[5]

**II. State Trademark Infringement (Count V)**

It is undisputed that none of the Accused Sales occurred in Arizona. (Docs. 80, 85 at ¶ 9.) Pursuant to A.R.S. § 44-1451(a):

> [T]he owner of a mark . . . may proceed by civil action against any person who, without the consent of the registrant:
>
> 1. Uses *in this state* the registered mark or a mark similar to the registered mark on or in connection with any goods or services . . . in any manner that is likely to cause confusion . . . .

(Emphasis added.) Plaintiff does not address this claim in any summary judgment pleading. Because there is no evidence Defendant used the Stone Creek mark in Arizona, the Court grants summary judgment for Defendant.

**III. Arizona Trade Secrets Violation (Count VI)**

It is undisputed that Defendant did not utilize any of Plaintiff's furniture designs or specifications, or steal any secret proprietary information from Plaintiff. (Docs. 80, 85 at ¶ 12.) A.R.S. § 44-401(4) defines "trade secret" as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique or process, that both:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainably by proper means by, other persons who can obtain economic value from its disclosure or use.

---

[5] Plaintiff requested summary judgment only on Counts I, II, and III, but not on Count IV for common law unfair competition. Defendant articulates no arguments other than those already discussed in this Order for granting summary judgment in its favor on Count IV. Accordingly, the Court denies summary judgment for either party on Count IV in accordance with its ruling on Counts I, II, and III.

- 12 -

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Plaintiff does not address this claim in any summary judgment pleading. There being no evidence that Defendant used or stole any of Plaintiff's trade secrets, the Court grants summary judgment for Defendant.

## VII. Conversion (Counts VII and VIII)

In Arizona, conversion requires "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Focal Point, Inc. v. U-Haul Co. of Ariz., Inc.*, 155 Ariz. 318, 319, 746 P.2d 488, 489 (Ariz. Ct. App. 1986) (quoting the Restatement (Second) of Torts § 222(A)(1) (1965)). There is no genuine dispute that Defendant did not convert any of Plaintiff's tangible property. (Doc. 80 at ¶ 13, Ex. G at 114:12-116:7.) Plaintiff's conversion claims are reformulated versions of its state trademark infringement and misappropriation of trade secrets claims. Plaintiff does not address any of these claims in any summary judgment pleading. There being no evidence of conversion, the Court grants summary judgment for Defendant.

## VIII. Unjust Enrichment (Counts IX and X)

Defendant argues that it is entitled to summary judgment because "unjust enrichment is a type of damage, it is not an independent tort." (Doc. 79 at 16.) Arizona recognizes unjust enrichment as a cause of action. *See City of Sierra Vista v. Cochise Enter., Inc.*, 144 Ariz. 375, 381-82, 967 P.2d 1125, 1131-32 (Ariz. Ct. App. 1984). "Unjust enrichment occurs whenever a person has and retains money or benefits which in justice and equity belong to another." *Id.* at 381. To recover under a theory of unjust enrichment, a plaintiff must prove: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment and (5) an absence of a remedy provided by law." *Id.* Defendant has not articulated any reasons why it is entitled to summary judgment on this claim. However, the Court notes that Plaintiff's claim of unjust

1  enrichment in Count X is based on Defendant's alleged misappropriation of Plaintiff's
2  furniture designs, specifications, and marketing materials. (Doc. 1 at 16.) As explained
3  previously, there is no evidence that Defendant utilized any of Plaintiff's furniture
4  designs or specifications, and it is not genuinely disputed that the marketing materials
5  utilized by Defendant belonged to Defendant, not to Plaintiff. (Doc. 80 at ¶¶ 12, 13; Ex.
6  H at nos. 5 and 6; Ex. F at 24:12-22, 25:9-27:18; Ex. G at 113:18-116:7.) The Court,
7  therefore, grants summary judgment for Defendant on Count X but denies summary
8  judgment on Count IX.

**IX. Breach of Contract (XI)**

It is undisputed that the only contract between the parties consisted of a series of purchase orders. Further, it is undisputed that none of the purchase orders contained a term prohibiting Defendant from using the Stone Creek mark. (Docs. 80, 85 at ¶ 4, Doc. 80 at Ex. F 39:20-40:11, Ex. G 113:5-17, 116:8-117:2.) Plaintiff presents no evidence that Defendant did not perform its obligations under the purchase orders. Instead, Plaintiff's breach of contract claim is a reformulation of its trademark infringement claims. Plaintiff does not address this issue in any summary judgment pleading. The Court grants summary judgment for Defendant.

**X. Breach of Implied Covenant of Good Faith and Fair Dealing (XII)**

"Arizona law implies a covenant of good faith and fair dealing in every contract." *Bike Fashion Corp., v. Kramer*, 202 Ariz. 420, 423, 46 P.3d 431, 434 (Ariz. Ct. App. 2002) (internal quotation omitted). "[A] party can breach the implied covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Id.* at 424, 46 P.3d at 435. It is undisputed that the only contract between the parties consisted of purchase orders for leather furniture manufactured by Defendant on behalf of Plaintiff. There is no evidence that Plaintiff did not receive the full benefit of those purchase orders. Plaintiff's claim for breach of the

1 implied covenant of good faith and fair dealing is another reformulation of its trademark
2 infringement claims. Any expectation of Plaintiff's that its mark would not be
3 misappropriated by Defendant derived not from any express or implied contractual term,
4 but from common law and statutory trademark law. The Court grants summary judgment
5 for Defendant.

## CONCLUSION

For the foregoing reasons, the Court grants partial summary judgment for Plaintiff on Counts I, II, III, and IV on the issues of ownership of the Stone Creek mark and Defendant's lack of permission to use the mark for the Accused Sales. The Court denies partial summary judgment on Defendant's ultimate liability under Counts I, II, III, and IV, however, because whether the concurrent use of the Stone Creek mark created a likelihood of consumer confusion is genuinely disputed. Additionally, the Court grants summary judgment for Defendant on Counts V, VI, VII, VIII, X, XI, and XII, but denies summary judgment on Count IX. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 79) is **GRANTED IN PART AND DENIED IN PART** in accordance with this Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 81) is **GRANTED IN PART AND DENIED IN PART** in accordance with this Order.

Dated this 28th day of August, 2014.

Douglas L. Rayes
United States District Judge