**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stone Creek Incorporated, | No. CV-13-00688-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Omnia Italian Design Incorporated, et al., | |
| Defendants. | |

Plaintiff Stone Creek Incorporated ("Stone Creek"), an Arizona furniture manufacturer, accused Defendant Omnia Italian Design Incorporated ("Omnia") of infringing its trademark by selling furniture labeled with Stone Creek's mark to The Bon-Ton Stores Incorporated ("Bon Ton"), which in turn sold them to customers in Bon Ton's trading territory ("BTTT" or "Territory").[1] In October 2015, the Court presided over a four-day bench trial. At its conclusion, the Court issued its findings of fact and concluded that Omnia did not infringe Stone Creek's mark because its use of the mark was unlikely to cause confusion. (Doc. 175.) Stone Creek appealed.

On appeal, the Ninth Circuit explicitly credited this Court's factual findings, but determined that the Court erred in its application of the law—specifically, the *Sleekcraft* factors, which guide the likelihood of confusion inquiry. *Stone Creek, Inc. v. Omnia*

---

[1] The BTTT consists of all areas within 200 miles of a Bon Ton furniture gallery. (Doc. 175 ¶ 17). The Territory includes portions of Iowa, Indiana, Ohio, Wisconsin, Pennsylvania, Illinois, and Michigan. (*Id.*)

*Italian Design, Inc.*, 875 F.3d 426, 436 (9th Cir. 2017); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). The Ninth Circuit determined that this Court's factual findings compelled the conclusion that Omnia's use of the Stone Creek mark is likely to cause confusion and, therefore, that Omnia is liable for trademark infringement. *Stone Creek*, 875 F.3d at 436, 444. Accordingly, the Ninth Circuit remanded the matter to this Court for the purpose of determining what remedies, if any, Stone Creek is entitled to given Omnia's liability for infringement. More specifically, the Ninth Circuit directed the Court to determine "whether Omnia had the requisite intent" to justify disgorgement of profits. *Id.* at 444.

Where, as here, a defendant is found liable for trademark infringement, a court may award the prevailing plaintiff (1) the defendant's profits, (2) the damages sustained by the plaintiff, (3) the costs of the action, and/or (4) injunctive relief. 15 U.S.C. § 1117(a); *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014). Stone Creek seeks only disgorgement of profits and a permanent injunction. The Court therefore confines its analysis to those two remedies. Moreover, because the Ninth Circuit explicitly credited the Court's factual findings and remanded solely for the purpose of determining whether those facts justify the remedies Stone Creek seeks, the Court's legal analysis is based on those undisturbed facts. (Doc. 175 ¶¶ 1-85); s*ee Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172 (9th Cir. 2006) (explaining that the district court is limited by the appellate court's remand in situations where the scope of the remand is clear).

**I. Omnia Did Not Willfully Infringe**

Disgorgement of profits is permitted "only in those cases where the infringement is willfully calculated to exploit the advantage of an established mark" or "where the defendant is attempting to gain the value of an established name of another." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405-06 (9th Cir. 1993) (internal quotation and citations omitted). "Willful infringement carries a connotation of deliberate intent to deceive," and "requires a connection between a defendant's awareness of its competitors

and its actions at those competitors' expense." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074 (9th Cir. 2015) (internal quotations and citations omitted). These circumstances must be proven by a preponderance of the evidence.[2]

Omnia did not willfully infringe on Stone Creek's mark because "Omnia did not choose the mark with the intent of trading of Stone Creek's goodwill." (Doc. 175 ¶ 57.) Instead, "Omnia selected the STONE CREEK mark for Bon Ton's private label, in part, because it sounded American and because marketing material and a logo were already prepared." (¶ 56.) Moreover, Omnia did not intend to trade on Stone Creek's goodwill in Bon Ton's trading territory because Stone Creek had no goodwill in that territory, and Omnia did not research where Stone Creek sold its furniture prior to using the mark. (¶¶ 2, 11-14, 23, 24, 29, 32, 35, 39, 61.) Although Stone Creek operated a website, it neither sold furniture through that website nor delivered furniture out of state, and the website did not create awareness of the brand in the BTTT. (¶¶ 13, 29.)

Relying on *Fleishmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 157 (9th Cir. 1963), Stone Creek argues that Omnia's deliberate adoption of an identical mark with knowledge of Stone Creek's senior use compels the conclusion that Omnia willfully infringed. (Doc. 197 at 6-8.) *Fleishmann*, however, is distinguishable. In that case, it was undisputed that the senior user's mark was well-known in the relevant market. *Fleishmann*, 314 F.2d at 156-57. In fact, the infringing junior user conceded that it "knew [the senior user] was one of the most popular brands on the market." *Id.* Given the senior user's popularity, the court concluded that the "only possible purpose" of the

---

[2] Circuit courts are divided on the appropriate evidentiary standard. *Compare Versa Prods. Co. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 207-08 (3d Cir. 1995) (applying clear and convincing standard), *with Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 193 (1st Cir. 2012) (applying preponderance of the evidence standard); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 226-27 (4th Cir. 2002) (same). The First Circuit in *Fishman* makes a compelling case for applying the preponderance of the evidence standard: "Fraud, a cousin of willfulness, has an historical association with the clear and convincing standard but the modern tendency in the Supreme Court is to reserve the clear and convincing burden, unless dictated by statute, for matters with constitutional implications like civil commitment." *Fishman*, 684 F.3d at 192. Because § 1117 of the Lanham Act does not prescribe a different, higher burden of proof, the Court will apply the preponderance of the evidence standard. *Cf. Collegenet, Inc. v. XAP Corp.*, 483 F. Supp. 2d 1058, 1065 (D. Or. 2007) (adopting the clear and convincing standard without analysis).

infringer's use of the mark would "have been to capitalize on the name." *Id.* The court added that the infringing user "must have known, [the senior user's popularity] would extend to their product because the public would associate the name" with the senior user's established quality and reputation. *Id.*

Here, however, the Court found that "[c]onsumers in the BTTT were not aware of Stone Creek furniture." (Doc. 175 ¶ 32.) For example, a brand awareness survey conducted by Dr. Cowan, an expert in statistics and economics, revealed that "99.75% of the respondents . . . are not familiar with Stone Creek in Arizona and Stone Creek has no brand awareness in the BTTT." (¶¶ 34-35.) Additionally, "[t]he vast majority of Google searches for Stone Creek Furniture originate in Arizona," and "[t]he number of Google searches for the Stone Creek website from the BTTT is negligible." (¶¶ 30-31.) Moreover, Omnia did not "research where Stone Creek sold its furniture" before adopting the mark, and offered motives for adopting it other than to capitalize on Stone Creek's reputation; namely, that Stone Creek sounded "American" and it was convenient to use the mark because the marketing materials and logo were already prepared. (¶¶ 56, 61.) Thus, the inference drawn by the Ninth Circuit in *Fleishmann* is not compelled by the Court's credited factual findings in this case.[3]

Stone Creek next argues that Omnia's failure to exercise due care to determine whether its use of the mark constituted infringement is conclusive evidence of willfulness. Many courts, however, have held that failure to conduct a trademark search does not necessarily compel such an inference. For example, the Fourth Circuit remarked that carelessness is quite different from an intent to confuse: "[T]he failure to conduct a trademark search or contact counsel shows carelessness at most, but is in any event

---

[3] Stone Creek also argues that Omnia's intentional appropriation of the mark compels the application of a presumption that Omnia intended to deceive customers. (Doc. 197 at 8.) Stone Creek's argument, however, conflates the intent factor under the *Sleekcraft* analysis with the willfulness inquiry. Although under *Sleekcraft* the knowing use of another's mark creates a presumption that the junior user had an intent to deceive, this presumption does not extend to the willfulness analysis for disgorgement of profits. *Hotko Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1096 (9th Cir. 2013); 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:62 (5th ed. 2018) (noting that there is a presumption of willfulness only when the infringer provided false contact information to a domain name registrar).

irrelevant because knowledge of another's goods is not the same as an intent to mislead and to cause consumer confusion." *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 398 (4th Cir. 2009) (internal quotation and citation omitted). The Second, Third, and Tenth Circuits share a similar understanding. *See SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 189 (3d Cir. 1999), *superseded on other grounds by statute*, 15 U.S.C. § 1117(a), *as recognized in Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 173-76 (3d Cir. 2005); *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1091-92 (10th Cir. 1999); *Savin Corp. v. Savin Group*, 391 F.3d 439, 460 (2d Cir. 2004). Accordingly, although the Court's factual findings might indicate that Omnia was careless in its adoption of Stone Creek's mark, these findings do not compel the conclusion that Omnia willfully infringed.

## II. Stone Creek Is Not Entitled to Disgorgement of Omnia's Profits

Even assuming that Omnia willfully infringed on Stone Creek's mark, Stone Creek is not entitled to disgorgement of Omnia's profits because the profits are not attributable to Omnia's infringement. Under the Lanham Act, if the defendant is found liable for willful trademark infringement, then the plaintiff is entitled to recover defendant's profits. 15 U.S.C. § 1117(a). In assessing the amount of profits, the plaintiff has the burden to prove the defendant's gross revenue from the infringement. The burden then shifts to the defendant to "prove that sales were demonstrably not attributable to the infringing mark," or that certain expenses "should be deducted from the gross revenue to arrive at the . . . lost profits." *Nintendo Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) (internal quotation and citation omitted); *Fifty-Six Hope Rd., Inc.*, 778 F.3d at 1076. If the defendant does not carry this burden, all of the profits from the infringing products belong to the mark owner. *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942).

The parties stipulated that Omnia's gross sales of the infringing products were $4,455,352. (Doc. 175 ¶ 85.) The burden therefore shifted to Omnia to demonstrate that the sales were not attributable to its infringement. Omnia met its burden by

demonstrating that the infringing products were purchased for reasons unrelated to consumer perception of an affiliation between Stone Creek and the infringing products. For instance, Omnia established that consumers in the BTTT were unaware of the Stone Creek brand and experienced no actual confusion between Stone Creek and Omnia when purchasing Omnia's Stone Creek furniture. (¶¶ 32, 35, 46-51, 81, 82.) Moreover, Omnia demonstrated that Bon-Ton did not contract with Omnia to sell its furniture because of the Stone Creek mark. Accordingly, even assuming that Omnia willfully infringed, none of its profits are attributable to the infringing mark.

### III. Stone Creek is Entitled to a Permanent Injunction

Stone Creek also asks the Court to permanently enjoin Omnia from using the Stone Creek mark. For its part, Omnia argues that "there is no need for a permanent injunction as there is no likelihood of future harm" because it "ceased using the Stone Creek mark in 2013 and no evidence suggests that [it] would ever use the mark again." (Doc. 196 at 30.) On appeal, the Ninth Circuit did not consider or make any conclusions regarding the propriety of a permanent injunction. Where, as here, "a court is confronted with issues that the remanding court never considered, the mandate requires respect for what the higher court decided, not for what it did *not* decide." *Hall v. City of L.A.*, 697 F.3d 1059, 1067 (9th Cir. 2012) (internal quotation and citation omitted) (emphasis original). Stated differently, a lower court is permitted to "decide anything not foreclosed by the mandate" of an appellate court. *Id.* Because this issue was not foreclosed by the Ninth Circuit's mandate, the Court concludes for the following reasons that Stone Creek is entitled to a permanent injunction.

Trademark law gives federal courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116.

> [A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between

> the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1248-50 (9th Cir. 2013) (applying *eBay* factors to trademark law). Although "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court," the "traditional principles of equity" demand a fair weighing of the factors listed above, taking into account the unique circumstances of each case. *eBay*, 547 U.S. at 391, 394.

Stone Creek has carried its burden on all four prongs. First, evidence of an intangible injury, such as a loss of customers, damage to a party's goodwill, or loss of control over one's business reputation can constitute irreparable harm. *Rent–A–Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991); *Herb Reed*, 736 F.3d at 1250; *see also Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135-36 (9th Cir. 1986) (finding the district court erred in denying a permanent injunction simply because the plaintiff failed to offer evidence suggesting the defendant would infringe in the future). For instance, "[i]f it is likely that confused persons will mistakenly attribute to [the] plaintiff defects or negative impressions they have of [the] defendant's goods or services, then the plaintiff's reputation (and its signifying trademark) is at risk because it is in the hands of a stranger." 5 McCarthy on Trademarks and Unfair Competition § 30:2. Here, "Stone Creek's president [] fielded a telephone call into its office regarding a customer concerned about a warranty issue on a leather sofa" that he purchased "from a Bon-Ton store in Chicago," which is indicative of such mistaken attribution. (Doc. 175 ¶¶ 74-75.)

Second, Stone Creek's irreparable harm indicates that damages at law are inadequate to remedy Omnia's infringement. "The terms 'inadequate remedy at law' and 'irreparable harm' describe two sides of the same coin. If the harm being suffered by plaintiff . . . is 'irreparable,' then the remedy at law (monetary damages) is 'inadequate.'" 5 McCarthy § 30:2. Indeed, Stone Creek is not entitled to disgorgement

of profits and therefore is without a monetary remedy for Omnia's infringement. Moreover, permanent injunctions are "the usual and normal remedy" for trademark infringement. *See* 5 McCarthy § 30:1.

Third, the balance of the equities favors Stone Creek. If the Court issues an injunction, Omnia merely would be required to refrain from infringing on Stone Creek's mark—something it already has done. *See Audi AG v. D' Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (noting that a defendant suffers no hardship in merely "refraining from willful trademark infringement"). In contrast, without an injunction Stone Creek would be left with little protection against potential future infringement, despite its success in this litigation. Under the circumstances, the balance of hardships weighs in Stone Creek's favor.

Finally, an injunction serves the public interest in being free from deception and confusion. *See Internet Specialties W., Inc. v. Milon–DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5 (9th Cir. 2009) ("The public has an interest in avoiding confusion between two companies' products."). Accordingly, the Court will permanently enjoin Omnia from infringing Stone Creek's mark.

**IV. Conclusion**

On remand for consideration of remedies, the Court concludes that Stone Creek is not entitled to disgorgement of profits because Omnia did not willfully infringe Stone Creek's mark and, even if it did, Omnia's profits were not attributable to its infringement. Stone Creek, however, is entitled to a permanent injunction.

**IT IS ORDERED** as follows:

1. In accordance with the Ninth Circuit's mandate, the Court finds in favor of Stone Creek and against Omnia on Stone Creek's trademark infringement claim.

2. Stone Creek is not entitled to disgorgement of profits.

3. Stone Creek is entitled to a permanent injunction. The parties are directed to meet and confer and, within **fourteen days** of the date of this order, submit a joint

proposed preliminary injunction order and form of judgment for the Court's review and approval.

Dated this 12th day of April, 2018.

_____
Douglas L. Rayes
United States District Judge